AMANDA C. YEN, ESQ. (NSBN 9726)
KRISTEN T. GALLAGHER (NSBN 9561)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
ayen@mcdonaldcarano.com
kgallagher@mcdonaldcarano.com

DARIUSH KEYHANI (*pro hac vice* to be submitted)
MEREDITH & KEYHANI, PLLC
125 Park Avenue, 25th Floor
New York, New York 10017
dkeyhani@meredithkeyhani.com

*Attorneys for Plaintiffs LT Game (Canada) Limited and LT Game Limited*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LT GAME (CANADA) LIMITED and LT GAME LIMITED,<br><br>Plaintiffs,<br><br>vs.<br><br>SCIENTIFIC GAMES CORPORATION,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs LT Game (Canada) Limited ("LT Game Canada") and LT Game Limited ("LT Game") (collectively, "Plaintiffs") for their complaint against defendant Scientific Games Corporation ("Scientific Games" or "Defendant") allege as follows:

**PRELIMINARY STATEMENT**

1. This is an action for misappropriation of trade secrets under the federal Defend Trade Secrets Act and the Nevada Uniform Trade Secrets Act, breach of contract under New Jersey common law, unfair competition under Nevada common law, and unjust enrichment under Nevada common law.

///

///

# PARTIES

2. LT Game Canada is incorporated under the laws of Ontario, Canada and is located at 4350 Steeles Avenue East, Box 15, Markham, Ontario L3R 9V4. LT Game Canada maintains a business office in Las Vegas, Nevada.

3. LT Game Canada conducts and manages the international sales and marketing activities for its gaming products, and oversees the installation, support, repair, and service of its products in the United States.

4. LT Game is a British Virgin Islands company with an address at Unit C 19/F, Entertainment Building, 30 Queen's Road Central, Hong Kong.

5. LT Game is a leading provider of live table game systems and computerized electronic card dealing shoes for the global gaming industry.

6. Scientific Games is a Delaware corporation with a global headquarters at 6650 S. El Camino Road, Las Vegas, Nevada 89118. Scientific Games is a lessor of progressive table games and live table games within the global gaming industry. Scientific Games leases/ commercializes its gaming equipment to casinos across the U.S. including casinos within this district.

7. On information and belief, Scientific Games acquired DEQ Systems Corporation ("DEQ"), a Quebec corporation on, January 18, 2017.[1]

# JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.*

9. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

10. This Court has personal jurisdiction over Defendant because Defendant has a headquarters in this state and within this district.

---

[1] DEQ Systems Corporation is listed as "merge dissolved" on the Nevada Secretary of State website. *See* http://nvsos.gov/sosentitysearch/CorpDetails.aspx?lx8nvq=VepnUtcw27FS1ink N%252f96YQ%253d%253d&nt7=0.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) as Defendant is a resident of this district.

**BACKGROUND**

12.     Plaintiffs are the owners of trade secrets including source code, development and design information and know-how relating to electronic card dealing shoes that, among other things, include card recognition technology in connection with databases and applications of game rules ("Plaintiffs' Trade Secrets").

13.     At all times, Plaintiffs have taken reasonable efforts to keep their Trade Secrets secret through the use of, among other measures, NDAs with third parties, including DEQ, and requiring all employees to sign a confidentiality agreement before they begin.

14.     Beginning in late 2010, Plaintiffs and DEQ participated in a number of discussions contemplating on-going collaborative efforts relating to developing, manufacturing and/or marketing a computerized electronic playing card dealing shoe.

15.     During this time, LT Game Canada president Linyi Feng was in contact with DEQ's former CEO, Earle Hall, and DEQ's former CTO, David Jacques.  On information and belief, David Jacques is currently employed by Scientific Games.

16.     During this time, Mr. Hall met with LT Game's president, Jay Chun, in Macau to propose a joint development involving LT Game's electronic card dealing shoe technology.

17.     On December 29, 2010 DEQ and LT Game executed a technology development agreement.  Under this agreement, the parties agreed that the receiving party would not use confidential information of the disclosing party for any purpose not expressly permitted by the agreement or disclose the confidential information to any third party.

18.     The parties further agreed to hold the disclosing party's confidential information in confidence using the same standard of care as it uses to protect its own confidential information of a similar nature, but in no event less than reasonable care.

19.     After executing the agreement, LT Game's Chief Software Officer Lyle Leng contacted Mr. Jacques relating to disclose Plaintiffs' Trade Secret protected information, including software.  Mr. Leng arranged for a prototype for an electronic card dealing shoe that

1  included Plaintiffs' Trade Secret protected information, including source code to be sent to DEQ's Quebec office.

20. Over the next several months, Mr. Feng visited DEQ's Quebec office and DEQ and LT Game worked together to develop the design for an electronic card dealing shoe that incorporated Plaintiffs' Trade Secret protected information.

21. On July 30, 2013, LT Game Canada, LT Game International Limited, and LT Game International (USA) Limited filed a declaratory judgment action against DEQ Systems Corporation ("DEQ") in the District of New Jersey relating to a dispute over intellectual property claims.[2]

22. On May 22, 2014 LT Game Canada, LT Game International Limited, and LT Game International (USA) Limited and DEQ entered into a Settlement Agreement and Covenant Not to Sue (the "Agreement") and the lawsuit was dismissed on May 27, 2014. LT Game was not a party to the Agreement.

23. In settlement negotiations for the first time, on April 8, 2014, DEQ's counsel sent a draft of the Agreement that included a provision for the Plaintiffs in the New Jersey Action to dismiss any claim of they may have relating to trade secret misappropriation in connection with DEQ's electronic card dealing shoe (the "HAWK Intelligent Shoe").

24. Under Section 8 of the Agreement, LT Game Canada agreed to dismiss any claim for misappropriation for trade secrets on the condition that DEQ pay LT Game a royalty of a percentage of the gross revenues generated from the HAWK Intelligent Shoe, including future improvements and modifications thereto.

25. The HAWK Intelligent Shoe offered for sale and sold by DEQ and now Defendant incorporates Plaintiffs' Trade Secrets.

///

///

---

[2] The lawsuit included claims of patent infringement/validity and tortious interference with contractual relationships but did not include any claim for misappropriation of trade secrets. *LT Game International Limited et al. v. DEQ Systems Corporation*, No. 2:13-cv-04593-WJM-MF ("New Jersey Action").

26. Pursuant to the Agreement, DEQ made monthly royalty payments to LT Game Canada and provided LT Game Canada with summary reports detailing the number of HAWK Intelligent Shoes sold and which casinos they were sold to.

27. After October 31, 2016, DEQ stopped providing LT Game with summary reports. LT Game made numerous inquiries regarding the reports to no avail.

28. Following a royalty payment on January 16, 2017, DEQ abruptly stopped making its monthly payments. LT Game Canada attempted to contact Defendant in January, February, and March of 2017 but Defendant has not responded.

29. After LT Game Canada exhausted all efforts to contact Defendant, LT Game Canada sent a letter notifying Scientific Games that based on its material breach of Section 8 of the Agreement, LT Game (Canada) rescinds its waiver and/or dismissal of its claim for misappropriation of trade secrets.

30. Plaintiffs have satisfied all conditions precedent.

**COUNT ONE**
**VIOLATION OF THE DEFEND TRADE SECRETS ACT**

31. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-30 herein.

32. The actions of Defendant and DEQ as described above constitute violations of one or more provisions of the Defend Trade Secrets Act of 2016 ("DTSA"), PL 114-153, May 11, 2016, 130 Stat 376, which amends the Economic Espionage Act, 18 U.S.C. § 1831 *et seq*.

33. Plaintiffs are the owners of Trade Secrets.

34. Plaintiffs have invested time, money, research, and other valuable resources over many years to develop their Trade Secrets.

35. Plaintiffs' Trade Secrets constitute independent economic value and are not generally known or readily ascertainable.

36. At all times, Plaintiffs have taken reasonable efforts to keep their Trade Secrets secret through the use of, among other measures, NDAs with third parties, including DEQ, and requiring all employees to sign a confidentiality agreement before they begin.

37. Subject to an NDA, which imposed a duty to maintain the confidentiality of Plaintiffs' Trade Secrets and to not improperly use and/or disclose confidential information and Trade Secrets belonging to Plaintiffs, DEQ acquired Plaintiffs' Trade Secrets. At all relevant times, Defendant knew about the confidential nature of Plaintiffs' Trade Secrets and Defendant knew or had reason to know that DEQ acquired Plaintiffs' Trade Secrets through improper means.

38. DEQ and Defendant misappropriated Plaintiffs' Trade Secrets by improper means by using and/or disclosing them for their own economic benefit to secure and execute lease/commercialization agreements for DEQ's HAWK Intelligent Shoe with casinos across the U.S., including but not limited to Commerce Casino, Bicycle Casino, and Hawaiian Garden Casino.

39. DEQ and Defendant continued to improperly use Plaintiffs' Trade Secrets following the enactment of the Defend Trade Secrets Act. Defendant continues to improperly use Plaintiffs' Trade Secrets to date.

40. Defendant has intentionally, willfully and maliciously misused Plaintiffs' Trade Secrets and/or confidential or proprietary information or knowledge of Plaintiffs, and continues to do so, in violation of a confidential relationship.

41. As a consequence of the foregoing, Plaintiffs have suffered and will continue to suffer irreparable harm and loss.

42. Plaintiffs seek injunctive relief precluding, enjoining, and restraining Defendant's use and/or disclosure of Plaintiffs' Trade Secrets and confidential information.

43. As a direct and proximate result of Defendant's conduct set forth herein, Plaintiffs have suffered monetary damages in an amount to be determined at trial.

**COUNT TWO**
**MISAPPROPRIATION OF TRADE SECRETS**
**UNDER NEVADA UNIFORM TRADE SECRETS ACT**

44. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-43 herein.

///

45. The actions of Defendant and DEQ as described above constitute violations of one or more provisions of Nevada's Uniform Trade Secrets Act ("UTSA"), NRS 600A.010 *et seq.*

46. Plaintiffs are the owners of Trades Secrets.

47. Plaintiffs' Trade Secrets derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

48. At all times, Plaintiffs have taken reasonable efforts to keep its Trade Secrets secret through the use of, among other measures, NDAs with third parties, including DEQ, and requiring all employees to sign a confidentiality agreement before they begin.

49. Subject to an NDA, which imposed a duty to maintain the confidentiality of Plaintiffs' Trade Secrets and to not improperly use and/or disclose confidential information and Trade Secrets belonging to Plaintiffs, DEQ acquired Plaintiffs' Trade Secrets. At all relevant times, Defendant knew about the confidential nature of Plaintiffs' Trade Secrets and Defendant knew or had reason to know that DEQ acquired Plaintiffs' Trade Secrets through improper means.

50. DEQ and Defendant misappropriated Plaintiffs' Trade Secrets by improper means by using and/or disclosing them for their own economic benefit to secure and execute lease/commercialization agreements for DEQ's HAWK Intelligent Shoe with casinos across the U.S., including but not limited to Commerce Casino, Bicycle Casino, and Hawaiian Garden Casino.

51. Following Defendant's acquisition of DEQ, Plaintiffs have contacted Defendant regarding this matter and Defendant has not responded.

52. Defendant and DEQ misappropriated Plaintiffs' Trade Secrets by using and/or disclosing them for their own economic benefit to secure and execute lease/commercialization agreements for DEQ's HAWK Intelligent Shoe with casinos across the U.S.

53. Defendant has intentionally, willfully and maliciously misused Plaintiffs' Trade Secrets and continues and will continue to do so.

54. As a consequence of the foregoing, Plaintiffs have suffered and will continue to suffer irreparable harm and loss.

55. Plaintiffs seek injunctive relief precluding, enjoining, and restraining Defendant's use and/or disclosure of Plaintiffs' Trade Secrets and confidential information.

56. As a direct and proximate result of Defendant's conduct set forth herein, Plaintiffs have suffered monetary damages in an amount to be determined at trial.

**COUNT THREE**
**BREACH OF CONTRACT UNDER NEW JERSEY LAW**
**(LT Game (Canada) against Defendant)**

57. Plaintiff LT Game Canada incorporates by reference the allegations set forth in paragraphs 1-56 herein.

58. LT Game Canada and DEQ entered into a valid and existing Settlement Agreement and Covenant Not to Sue on May 22, 2014.

59. Pursuant to Section 8 of the Agreement, LT Game Canada agreed to dismiss any claim for misappropriation of Trade Secrets on the condition that DEQ pay LT Game a royalty of a percentage of the gross revenues generated from DEQ's HAWK Intelligent Shoe, including future improvements and modifications thereto.

60. Scientific Games acquired DEQ and continues to lease/commercialize the Intelligent Hawk Shoe to Casinos in the U.S. and Canada.

61. Defendant materially breached the Agreement by failing to pay LT Game Canada royalties for its lease/commercialization of the Intelligent Hawk Shoe from January 2017 to present.

62. LT Game Canada performed all of its contractual duties under the Agreement.

63. As a result of Defendant's breach of the Agreement LT Game Canada has suffered damages in an amount to be determined at trial.

**COUNT FOUR**
**UNFAIR COMPETITION UNDER NEVADA LAW**

64. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-63 herein.

65.   The foregoing acts constitute unfair competition under Nevada state law.

66.   As a direct and proximate consequence of the foregoing, Plaintiffs have no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendant is enjoined from using and/or disclosing Plaintiffs' Trade Secrets and other confidential information, and enjoined from engaging in the infringing conduct set forth above.

67.   In addition, Plaintiffs are entitled to all damages that it has sustained by virtue of the aforementioned conduct, in an amount to be determined at trial, including, without limitation, Defendant's profits and gains arising from the wrongful acts described herein, Plaintiffs' lost profits, attorneys' fees, costs and interest.

68.   Furthermore, because Defendant's actions are wanton, willful, malicious, and have been undertaken in conscious disregard of Plaintiffs' rights, Defendant's also are liable for punitive damages.

**COUNT FIVE**
**UNJUST ENRICHMENT**

69.   Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-68 herein.

70.   As a result of Defendant's unlawful conduct including but not limited to their misappropriation of Plaintiffs' Trade Secrets, Defendant has diverted substantial revenues from Plaintiffs.

71.   Furthermore, Defendant has and continues to use and/or disclose Plaintiffs' Trade Secrets and confidential information to develop and sell their own competing mobile ticketing platform.

72.   Thus, Defendant has benefitted by saving the significant time and cost that it would otherwise have had to incur in order to develop its own mobile ticketing platform.

73.   As a direct and proximate consequence of the foregoing, Defendant has been unjustly enriched at Plaintiffs' expense.

74.   It would be against equity and good conscience to permit Defendant to retain the substantial revenues that they have realized through the aforementioned conduct.

75. Accordingly, Plaintiffs are entitled to damages in an amount to be determined at trial, plus attorneys' fees, costs, and interest.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for relief, as follows:

A. An award of damages adequate to compensate Plaintiffs for Defendant's misappropriation of Plaintiff's Trade Secrets, together with prejudgment and post-judgment interest, attorneys' fees and costs;

B. An award of damages adequate to compensate Plaintiff LT Game Canada for Defendant's breach of contract, together with prejudgment and post-judgment interest and costs;

C. An award of damages adequate to compensate Plaintiffs for Defendant's unfair competition, together with prejudgment and post-judgment interest and costs;

D. An award of damages adequate to compensate Plaintiffs for Defendant's unjust enrichment, together with prejudgment and post-judgment interest and costs;

E. A preliminary and permanent injunction, enjoining Defendant from misusing Plaintiffs' Trade Secrets and unfairly competing with Plaintiffs.

F. That this is an exceptional case and awarding to Plaintiffs their costs, expenses and reasonable attorney fees.

G. That the Court award punitive damages to Plaintiffs owing to the willful, wanton, and malicious nature of Defendant's acts; and

H. Awarding to Plaintiffs such other and further relief as the Court may deem just and proper.

///
///
///
///
///
///
///

**DEMAND FOR JURY TRIAL**

In accordance with Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury for all issues triable by jury.

DATED this 7th day of April, 2017.

        McDONALD CARANO LLP

        By: /s/ Amanda C. Yen
            Amanda C. Yen, Esq. (NSBN 9726)
            Kristen T. Gallagher, Esq. (NSBN 9561)
            2300 West Sahara Avenue, Suite 1200
            Las Vegas, Nevada 89102
            Telephone: (702) 873-4100
            ayen@mcdonaldcarano.com
            kgallagher@mcdonaldcarano.com

            Dariush Keyhani (*pro hac vice* to be submitted)
            MEREDITH & KEYHANI, PLLC
            125 Park Avenue, 25th Floor
            New York, New York 10017
            Telephone: (212) 760-0098
            dkeyhani@meredithkeyhani.com

            *Attorneys for Plaintiffs LT Game (Canada) Limited and LT Game Limited*